Peoples Building, Loan and Savings Association v.
Lewis R. Marston et al.

Decided June 21, 1902.

**1.—Usury—Device—Building and Loan Association—Monthly Stock Dues.**

Where plaintiff subscribed for stock in a building and loan association in order to obtain a loan, and the monthly stock dues added to the amount paid by him monthly on interest and premium exceeded the legal rate of interest on the sum loaned, such monthly dues were but a device to cover usury.

**2.—Same—Loan Contract—Basis of Settlement.**

Where a building and loan contract was tainted with usury, the court properly charged the borrower, in an action by him for a settlement of accounts, with the amount of the loan received, and credited him with the value of the stock and the sums paid on interest and premium.

**3.—Same—Evidence—Varying Written Contract.**

Where evidence tending to vary a written contract was admissible to show usury in the contract, and was considered only for that purpose, there was no error in its admission.

Appeal from the District Court of Johnson County. Tried below before Hon. W. H. Bledsoe, Special Judge.

*S. C. Padelford,* for appellant.

*Cleveland & Haynes,* for appellees.

TEMPLETON, Associate Justice.—In March, 1893, Lewis R. Marston desired to borrow the sum of $1700, with which to improve his family residence lot in the city of Cleburne. Taylor & Logan, agents of the Peoples Building, Loan and Savings Association, learned the fact, and solicited Marston to deal with their principal. Marston, in order to obtain the loan, subscribed for nineteen shares of the stock of the association of the par value, when matured, of $100 per share. He applied for a loan of $1900. It was agreed, in accordance with the plan of the association, that he should receive $1710 in cash, the remaining 10 per cent of the loan applied for to be credited to the general profit account of the association. Marston was to pay $12.35 per month on stock dues, and $7.92 per month on interest, and $7.92 per

month on premium. These payments were to continue until the stock matured, when the stock was to be surrendered to the association and the debt canceled. Marston was to contract with Fudge & Dunbar for the building of a house on said lot according to prescribed plans and specifications, and to secure the contractors by a mechanic's lien which was to be ultimately transferred to the association as security for the loan. The loan was to be further secured by a deposit of stock and by deed of trust on said lot. The building contract was entered into with Fudge & Dunbar, and was prosecuted by them to completion. The mechanic's lien was duly fixed, and in September, 1893, was assigned by Fudge & Dunbar to the association. The stock was deposited as collateral, and the deed of trust was duly executed. Marston gave to the association his obligation to pay the sum of $1900, in installments, according to the original agreement. The association sent to Marston the sum of $1648.25. It retained the sum of $61.75 to cover stock dues for the months of April, May, June, July, and August, 1893. It credited its general profit account with the sum of $190. Marston continued to pay the monthly installments on stock dues and on interest and premium until he had paid on stock the sum of $876.85, and on interest and premium the sum of $1030.07. He and his wife, who was a party to the aforesaid contracts, then brought this suit against the association and asked that the liens on their property be canceled. They claimed that the contract was usurious, and sought judgment against the association for the sum paid in excess of the amount received. The association stood on the contract, and reconvened for the balance due according to its terms and for a foreclosure. A jury was impaneled to try the cause, but when the evidence had been adduced the trial judge peremptorily instructed a verdict for the plaintiffs for $2.65, and for the cancellation of the liens on their property. This appeal is prosecuted by the association from a judgment entered on such verdict.

It is evident that the trial judge found the contract to be usurious, and settled the accounts between the parties by charging the plaintiffs with the sum of $1648.25, the amount received in cash, and the sum of $61.75, the amount retained to cover overdue payments on stock, in all the sum of $1710, and credited them with $681.95, the value of their stock as shown by the undisputed evidence, and the sum of $1030.07, the amount paid on interest and premium. Appellant contends that it loaned to Marston the sum of $1900; that the monthly payments of $15.84 on interest and premium considered as interest, is just 10 per cent per annum of the sum loaned, and that the contract was not usurious; that it is entitled to recover the sum loaned at the rate specified, less the value of Marston's stock, and to have a foreclosure of its lien.

The sum loaned to Marston was $1710, and the association was entitled to charge interest on no greater sum. The monthly payments of $15.84 on interest and premium must be regarded simply as payments

on interest, and as they aggregate $190.08 yearly, they amount to more than 10 per cent per annum of the sum loaned. The contract was therefore usurious. The sum of $190, which was retained by the association as a bonus and credited to its general profit account, appears to be nothing but a premium fixed by the association as one of the terms upon which loans were made. The arrangement amounts to no more than a plan which allows the stockholders of the association to borrow only 90 per cent of the face value of their stock, and its obvious purpose was to enable the association, by charging interest on a greater sum than that loaned, to receive interest in excess of the legal rate. The plan, though somewhat complicated, is a palpable device to cover up usury. The charging of interest on premiums exacted of borrowers has never been permitted in this State. Jackson v. Cassidy, 68 Texas, 282.; Abbot v. Loan Association, 86 Texas, 467; Loan Association v. Biering, 86 Texas, 476. Such interest is nowhere allowed except when permitted by statute. End. on Building Assns., sec. 403; Thomp. on Building Assns., sec. 256. The evidence being uncontroverted, the trial judge was justified in holding the contract to be usurious, and in instructing a verdict for the plaintiffs. The contract being usurious, the trial court properly settled the accounts of the parties by charging the plaintiffs with the amount of the loan received and crediting them with the value of their stock and the sums paid on interest and premium.

Appellant complains of the admission of the testimony of Marston and Taylor concerning the negotiations for the loan, on the ground that the same tended to vary the written contract. The court did not consider the evidence for such purpose. The testimony was admissible on the issue as to whether there was usury in the contract. Building Association v. Peightal, 25 Texas Civ. App., 390, 61 S. W. Rep., 428.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.